UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

In re: CREEKSIDE VINEYARDS,
Inc.,                                    NO. CIV. 2:09-2273 WBS EFB

           Debtor,                       BK. NO. 02-30522-B-11
_____/       ADV. PRO. NO. 09-02085-B

KATHLEEN LAGORIO JANSSEN,
CHRIS LAGORIO, and JOSEPH                MEMORANDUM AND ORDER RE:
DONDERO,                                 MOTION TO WITHDRAW REFERENCE

           Plaintiffs,

     v.

DAVID A. HIRSCH, and DONALD F.
HIRSCH,

           Defendants.
_____/

----oo0oo----

        Plaintiffs Kathleen Lagorio Janssen, Chris Lagorio, and

Joseph Dondero brought this action seeking a permanent injunction

and order prohibiting defendants David A. Hirsch and Donald F.

Hirsch from further litigating their pending state court suit

against plaintiffs as precluded by the bankruptcy court's

1

previous orders in Chapter 11 proceedings that were dismissed in January 2006.  Defendants filed counterclaims against plaintiffs alleging breach of fiduciary duty, conspiracy to commit breach of fiduciary duty and breach of contract, intentional infliction of emotional distress, breach of California Corporations Code § 309, and breach of 18 U.S.C. § 154.  Defendants now move to withdraw the reference of this adversarial action to bankruptcy court and transfer the matter to this court pursuant to 28 U.S.C. §§ 157(d)-(e).

I.  Factual and Procedural Background

        This dispute originates from protracted litigation over the corporate control of Creekside Vineyards, Inc. ("Creekside Inc."), a closely held corporation, and Creekside Vineyards, LP ("Creekside LP"), a related partnership.  Defendants David A. Hirsch and Donald F. Hirsch own fifty shares of Creekside Inc. stock each, giving them one-third control of Creekside Inc. (Defs.' Req. Judicial Notice Ex. E.)[1]  Plaintiffs Kathleen Lagorio Janssen ("Janssen") and Chris Lagorio ("Lagorio") together are also one-third owners of Creekside Inc., while the remaining shares were issued to Patrick N. McCarthy ("McCarthy"). (Id.)  On August 18, 2001, at a shareholder meeting to elect directors and officers for Creekside Inc., Janssen asserted that McCarthy was in default on a promissory note to the corporation and was therefore not entitled to vote his stock.  (Id. Ex. B. ¶¶

_____

        [1]    The documents contained in defendants' request for judicial notice consist of court documents from the previous litigation state and bankruptcy litigation.  Because the accuracy of these documents can not be questioned, the court will consider them in deciding the motion to withdraw the reference.  See Fed. R. Evid. 201(b).

2

1    3-5.)  Janssen then voted the McCarthy stock to elect plaintiffs
2    as Directors of the Corporation and Janssen as President, with
3    defendants dissenting.  (Id. Ex. E.)  Defendants and McCarthy
4    each filed lawsuits in state court in San Joaquin County seeking
5    to determine the validity of the election of the Creekside Inc.
6    Board.  (See Id. Ex. C.)

7          On September 20, 2002, the same day as the state court
8    indicated that it would likely grant defendants' request for an
9    order directing that a special shareholder meeting to elect a new
10   Board be held where McCarthy was eligible to vote his stock,
11   plaintiffs filed for protection on behalf of Creekside Inc. and
12   Creekside LP under Chapter 11 of the Bankruptcy Code in federal
13   bankruptcy court.  (Id. Ex. E.)  Defendants moved to dismiss the
14   Chapter 11 proceedings for bad faith and lack of jurisdiction,
15   but their motion was denied.  (Pls.' Req. Judicial Notice Ex.
16   A.)[2]  Defendants objected to the subject matter jurisdiction of
17   the court and the illegitimacy of plaintiffs' bankruptcy petition
18   because of their disputed election as Directors several times
19   throughout the Chapter 11 proceeding.  (Id.)  Defendants
20   additionally objected to motions authorizing the sale of the
21   remaining assets of Creekside Inc. and Creekside LP and to
22   authorize a compromise made with Creekside's landlord on the
23   grounds that the bankruptcy petitions were unauthorized.  (Id.)
24   These objections were overruled.  (Id.)

25   _____

26         [2]    The documents contained in plaintiffs' request for
     judicial notice consist of court documents from the previous
     litigation in bankruptcy court.  Because the accuracy of these
27   documents can not be questioned, the court will consider them in
     deciding the motion to withdraw the reference.  See Fed. R. Evid.
28   201(b).

                                    3

1    On June 17, 2005, while the Chapter 11 cases were still
2   pending, defendants filed an action against plaintiffs in state
3   court in San Joaquin County, alleging breach of fiduciary duty,
4   conspiracy to commit breach of fiduciary duty and breach of
5   contract, intentional infliction of emotional distress, breach of
6   California Corporations Code § 309, and breach of 18 U.S.C. §
7   154. (Id.)  On January 24, 2006 the bankruptcy court dismissed
8   the Chapter 11 cases of both Creekside entities. (Id.)  The
9   court issued an order which stated that "[d]ismissal shall not
10  affect the validity or enforceability of the following orders: (A)
11  Order Approving Compromise of Controversy Related to Assumption
12  of Real Property Leases (Dkt. No. 262); (B) Order Approving
13  Debtors' Joint Verified Motion to Assume Non-Residential Property
14  Leases and Approving Assignment of Same." (Id.)

15    On March 3, 2006, the Superior Court of San Joaquin
16  County sustained demurrers to defendants' complaint on the ground
17  that defendants' claims were barred by the doctrines of res
18  judicata and collateral estoppel. (Id.)  The California Third
19  Appellate District reversed the Superior Court's decision on
20  December 20, 2007, finding that the bankruptcy court was not a
21  court of competent jurisdiction to make a final determination as
22  to the legitimacy of plaintiffs' control of Creekside Inc. and
23  Creekside LP and had not clearly "actually determined" that
24  plaintiffs' control was legitimate. (Defs.' Req. Judicial Notice
25  Ex. E 15.)

26    As the state litigation continued, plaintiffs requested
27  that the bankruptcy court reopen bankruptcy proceedings to
28  enforce their earlier orders in accordance with the January 2006

4

1   dismissal order.   On November 3, 2008, plaintiffs' obtained an

2   order from the bankruptcy court to reopen bankruptcy proceedings.

3   (Defs.' Mem. Supp. Mot. Withdraw Reference 5:20-28.)   Plaintiffs

4   filed this action on February 2, 2009, asking the bankruptcy

5   court to enjoin the continuation of defendants' state court

6   litigation.   (Pls.' Objection Mot. Withdraw Reference 3:8-10.)

7   On June 22, 2009, in response to the action, defendants filed an

8   Answer and Counterclaims alleging the same claims as the lawsuit

9   in San Joaquin County Superior Court.   (Pls.' Req. Judicial

10  Notice Ex. A.)   Defendants demanded a jury trial on the

11  counterclaims, and refused to consent to a jury trial in

12  bankruptcy court.   (Id.)   The parties agreed to resolve the

13  dispute by cross-motions for summary judgment based on the

14  Amended Joint Final Agreed Statement of Facts.   (Id.)   Defendants

15  filed this Motion to Withdraw along with their cross-motion for

16  summary judgment on August 17, 2009.

17  II.   Discussion

18          Congress enacted the Bankruptcy Amendments and Federal

19  Judgeship Act of 1984 in response to the Supreme Court case

20  Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458

21  U.S. 50 (1982), which held that the Bankruptcy Reform Act of 1978

22  "impermissibly shifted essential attributes of judicial power

23  from the Article III district court to its non-Article III

24  adjunct, the bankruptcy court."   Sec. Farms v. Int'l Bhd. of

25  Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1008

26  (9th Cir. 1997).   Under the 1984 law, district courts now have

27  original jurisdiction over all cases arising under title 11 of

28  the Bankruptcy Code, but may "'refer' bankruptcy cases to the

bankruptcy judges for the district automatically.  This authority

[is] tempered, however, with a provision that the reference may

or shall be withdrawn in certain situations."  In re Casimiro,

No. 07-1218, 2008 WL 4482851, at *1 (E.D. Cal. Sept. 29, 2008)

(Ishii, J.) (quoting In re Vicars Ins. Agency, Inc., 96 F.3d 949,

951 (7th Cir. 1996)).  Pursuant to 28 U.S.C. § 157(d),

> [t]he district court may withdraw, in whole or in part,
> any case or proceeding referred under this section, on
> its own motion or on timely motion of any party, for
> cause shown.  The district court shall, on timely motion
> of a party, so withdraw a proceeding if the court
> determines that resolution of the proceeding requires
> consideration of both title 11 and other laws of the
> United States regulating organizations or activities
> affecting interstate commerce.

This language "contains two distinct provisions: the first

sentence [for cause shown] allows permissive withdrawal, while

the second sentence [United States laws affecting interstate

commerce] requires mandatory withdrawal in certain situations."

In re Coe-Truman Technologies, Inc., 214 B.R. 183, 185 (N.D. Ill.

1997).  "The burden of demonstrating both mandatory and

discretionary withdrawal is on the movant."  In re U.S. Airways

Group, Inc., 296 B.R. 673, 667 (E.D. Va. 2003).

     A. Right to a Jury Trial

          Pursuant to 28 U.S.C. § 157(e), "[i]f the right to a

jury trial applies in a proceeding that may be heard under this

section by a bankruptcy judge, the bankruptcy judge may conduct

the jury trial . . . with the express consent of all the

parties."  Defendants filed counterclaims against plaintiffs and

filed a timely demand for a jury trial.  Defendants refused to

consent to a jury trial before a bankruptcy court, and therefore

contend that the court must immediately withdraw the reference to

6

bankruptcy court under § 157(e) because they have a Seventh
Amendment right to a jury trial.

It is uncontested that defendants have a right to a
jury trial for their counterclaims because they have only sought
damages unique to them as shareholders, rather than damages for
Creekside Inc. as a whole.  Jones v. H. F. Ahmanson & Co., 1
Cal.3d 93, 107-08 (1969).  Defendants counterclaims only state
claims for damages at law, entitling defendants to a jury trial
under the Seventh Amendment.  See DePinto v. Provident Sec. Life
Ins. Co., 323 F.2d 826, 836-37 (9th Cir. 1963).  However, as the
Ninth Circuit pronounced in In re Healthcentral.com, "a Seventh
Amendment jury trial right does not mean the bankruptcy court
must instantly give up jurisdiction and that the case must be
transferred to the district court.  Instead, the bankruptcy court
is permitted to retain jurisdiction over the action for pre-trial
matters."  504 F.3d 775, 787 (9th Cir. 2007) (citations omitted).

The Ninth Circuit found that automatic withdrawal is
not required first because "allowing the bankruptcy court to
retain jurisdiction over pre-trial matters, does not abridge a
party's Seventh Amendment right to a jury trial."  Id.  The court
explained, "even if a bankruptcy court were to rule on a
dispositive motion, it would not affect a party's Seventh
Amendment right to a jury trial, as these motions merely address
whether trial is necessary at all."  Id. (citing Diamond Door Co.
v. Lane-Stanton Lumber Co., 505 F.2d 1199, 1203 & n.6 (9th Cir.
1974)).  Second, the court also found that "requiring that an
action be immediately transferred to [the] district court simply
because of a jury trial right would run counter to our bankruptcy

7

1  system," a system that "promotes judicial economy and efficiency

2  by making use of the bankruptcy courts unique knowledge of Title

3  11 and familiarity with the actions before them." Id. at 787-88.

4  "Only by allowing the bankruptcy court to retain jurisdiction

5  over the action until trial is actually ready do we ensure that

6  our bankruptcy system is carried out." Id. at 788.

7        Here, both parties have drafted an Agreed Statement of

8  Facts and are awaiting resolution of cross-motions for summary

9  judgment on the limited issue of whether the bankruptcy court

10 should issue an injunction requiring defendants to dismiss their

11 state litigation.  Plaintiffs answered defendants' counterclaims

12 on July 13, 2009, and no further action has been taken on the

13 counterclaims.  Clearly, any jury trial on the counterclaims is

14 distant and defendants' Seventh Amendment right to a jury trial

15 is not harmed by the bankruptcy court's determination of pre-

16 trial motions.  Accordingly, defendants' motion to withdraw the

17 reference on the basis of a Seventh Amendment right to jury trial

18 is premature.

19    B. Mandatory Withdrawal

20        Withdrawal of the reference to bankruptcy court is

21 mandatory if "resolution of the proceeding requires consideration

22 of both title 11 and other laws of the United States regulating

23 organizations or activities affecting interstate commerce."  28

24 U.S.C. § 157(d).  The Ninth Circuit has followed other circuits

25 and stated in dictum that mandatory withdrawal hinges "on the

26 presence of substantial and material questions of federal law."

27 Sec. Farms, 124 F.3d at 1008 n.4; see e.g., In re Vicars, 96 F.3d

28 at 952; In re Iconosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir.

8

1990), <u>cert. denied</u>, 502 U.S. 808 (1991).  The mandatory

withdrawal provision should be construed narrowly to avoid

creating an "'escape hatch' by which bankruptcy matters could

easily be removed to the district court." <u>Stratton v. Garcia</u>,

No. CIV-F-06-1495 AWI, 2007 WL 512506, at *1 (E.D. Cal. Feb. 12,

2007) (Ishii, J.) (quoting <u>In re Vicars</u>, 96 F.3d at 952).

Accordingly, "the issues in question [should] require more than

the mere application of well-settled . . . non-bankruptcy law."

<u>In re Vicars</u>, 96 F.3d at 953.

        Under the plain meaning of the statute, the substantial

and material question of non-bankruptcy federal law must also be

regarding a federal law "regulating organizations or activities

affecting interstate commerce." <u>See</u> 28 U.S.C. § 157(d).  "If

Congress intended all actions involving constitutional issues to

be subject to mandatory withdrawal it could have so provided . .

. [i]nstead, Congress in § 157(d)'s mandatory withdrawal

provision requires district courts to withdraw the reference only

for those cases involving the interpretation of federal laws

regulating organizations or activities affecting interstate

commerce." <u>In re Roman Catholic Bishop of San Diego</u>, No.

07cv1355-IEG(RBB), 2007 WL 2406899, at *3 (S.D. Cal. Aug. 20,

2007); <u>see</u> <u>United States v. One Parcel of Real Property</u>, 137 B.R.

802, 805 (D. Or. 1992).

        Defendants contend that a number of jurisdictional and

constitutional issues are substantial and material questions of

federal law that warrant mandatory withdrawal of the reference.

Defendants argue that four jurisdictional issues mandate

withdrawal.  First, defendants claim that the propriety of any

1  injunction from the bankruptcy court requiring dismissal of their

2  state proceedings turns on the <u>Younger</u> doctrine, which cautions

3  federal courts to refrain from exercising jurisdiction over

4  matters where they interfere with state court proceedings.  <u>See</u>

5  <u>Younger v. Harris</u>, 401 U.S. 37, (1971).  Second, defendants argue

6  that there is a serious question as to whether the ongoing

7  proceedings in bankruptcy court violate the Anti-Injunction Act,

8  28 U.S.C. § 2283, which prohibits a federal court from granting

9  an injunction to state proceedings in a State court unless

10  authorized by Congress or if necessary to protect and effectuate

11  its judgments.  Third, defendants contend that there is a

12  substantial question whether the bankruptcy court must abstain

13  from the proceedings because of the mandatory or discretionary

14  provisions of 28 U.S.C. § 1334(c), which authorize federal courts

15  to refrain from hearing a particular proceeding in the interest

16  of comity with state courts or out of respect of state law.

17  Finally, defendants argue that there is a question as to whether

18  the proceedings must be dismissed to give full faith and credit

19  to the ruling of the California Court of Appeals rejecting

20  plaintiffs' <u>res judicata</u> and collateral estoppel defenses in

21  state court pursuant to 28 U.S.C. § 1738.

22       None of these jurisdictional issues require the

23  interpretation of any federal law that regulates organizations or

24  activities affecting interstate commerce.  The court cannot find

25  that these questions come within the narrow confines of § 157(d)

26  without a demonstration that this action requires interpretation

27  of a federal law that regulates activities affecting interstate

28  commerce.  The jurisdictional issues presented are not related to

10

statutes regulating activities that affect interstate commerce.
Were the court to hold otherwise, literally any case tangentially
touching upon any federal statute or involving individuals
engaged in interstate commerce would have to be withdrawn to
federal district court.  This would create the exact "escape
hatch" Congress wished to avoid when it enacted § 157.  See In re
Vicars, 96 F.3d at 952; Stratton v. Garcia, 2007 WL 512506 at *1.

Regardless, defendants' jurisdictional issues do not
involve "substantial and material" questions of federal law.  The
federal issues invoked by defendants involve well-settled
statutory and common law doctrines relating to federal
jurisdiction.  The contours of these doctrines are well defined.
Defendants have not provided a reason to believe that resolution
of these issues would require "'significant interpretation' of
the non-Code statute[s]," rather this appears to be a case that
would require mere application of "'hornbook' non-bankruptcy
law."  In re Vicars, 96 F.3d at 953.  None of the questions
presented involve novel or intricate federal law questions that
require the expertise of the court.

Defendants also raise a number of constitutional issues
that they argue necessitate mandatory withdrawal.  Defendants
first contend that this action presents the question of whether
Article III prohibits a bankruptcy court from reopening Chapter
11 proceedings for the purposes of hearing adversary proceedings
by non-debtors against third parties seeking to enjoin pending
state proceedings.  Second, defendants argue that the Fifth
Amendment procedural due process provisions may prohibit the
bankruptcy court's previous order dismissing the Chapter 11 cases

1    without a final appealable order of plan of reorganization.

2         Defendants' constitutional questions also fail to

3    establish a case for mandatory withdrawal.  First, "[a]n action

4    alleging a violation of the federal constitution does not rely,

5    as a source of authority, upon the Commerce Clause."  In re Roman

6    Catholic Bishop of San Diego, 2007 WL 2406899 at *3.  Defendants

7    have not demonstrated that the Article III and Fifth Amendment

8    challenges they argue are material to the judgment are related to

9    interstate commerce, and therefore their claims cannot provide a

10   basis for withdrawal under § 157(d).  Second, defendants have not

11   demonstrated that the constitutional issues they raise are

12   "substantial and material."  A bankruptcy court's ability to

13   reopen proceedings is well-established, and the contours of the

14   Fifth Amendment due process in the area of bankruptcy litigation

15   are similarly well-settled.  See In re Shondel, 950 F.2d 1301,

16   1307-09 (7th Cir. 1991); In re Roman Catholic Bishop of San

17   Diego, 2007 WL 2406899 at *2.  The constitutional issues

18   presented by defendants are not the kind of issues that give rise

19   to mandatory withdrawal under § 157(d).

20        C. Permissive Withdrawal

21        Although defendants' assertion of its right to a jury

22   trial is premature and withdrawal is not mandatory, this

23   conclusion does not end the court's inquiry; where a withdrawal

24   of reference is not required, a district court may still withdraw

25   "any case or proceeding referred [to the bankruptcy court] . . .

26   for cause shown."  28 U.S.C. § 157(d).  To determine whether

27   "cause" for withdrawal exists, a district court considers several

28   factors, including "the efficient use of judicial resources,

delay and costs to the parties, uniformity of bankruptcy
administration, the prevention of forum shopping, and other
related factors." Sec. Farms, 124 F.3d at 1008 (citing In re
Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993)).  In this
inquiry, the court "should first evaluate whether the claim is
core or non-core, since it is upon this issue that questions of
efficiency and uniformity will turn." Orion, 4 F.3d at 1101;
accord In re Daewoo Motor Am., Inc., 302 B.R. 308, 311 (C.D. Cal.
2003).

        In general, a claim is "core" if it "invokes a
substantive right provided by title 11 or . . . by its nature,
could arise only in the context of a bankruptcy case." In re
Gruntz, 202 F.3d 1074, 1081 (9th Cir. 2000) (quoting In re Wood,
825 F.2d 90, 97 (5th Cir. 1987)).  In contrast, "non-core" claims
"are those not integral to the restructuring of debtor-creditor
relations and not involving a cause of action arising under title
11." Id. (citing In re Windsor Commc'ns Group, 75 B.R. 713, 721
(E.D. Pa. 1985)).  Under 28 U.S.C. § 157(b)(3), "[t]he bankruptcy
judge shall determine, on the judge's own motion or on timely
motion of a party, whether a proceeding is a core proceeding
under this subsection or is a proceeding that is otherwise
related to a case under title 11."

        Courts in the Third Circuit have held that, "in the
context of a motion to withdraw the reference, . . . § 157(b)(3)
requires the bankruptcy judge to make the initial determination
of whether a proceeding is core or non-core." Thomason Auto
Group, LLC v. China Am. Co-op. Auto., Inc., No. 08-3365, 2009 WL
512195, at *5 n.6 (D.N.J. Feb. 27, 2009); accord Certain

1   <u>Underwriters At Lloyd's of London v. Otlowski</u>, No. 08-3998, 2009

2   WL 234957, at *2 (D.N.J. Jan. 29, 2009); <u>see</u> <u>Travellers Int'l AG</u>

3   <u>v. Robinson</u>, 982 F.2d 96, 97-98 (3d Cir. 1992).   After closer

4   examination, however, this court agrees with certain district

5   courts in the Ninth Circuit that the plain language of §

6   157(b)(3) simply describes "the scope of authority for bankruptcy

7   courts under section 157 once federal jurisdiction is found to

8   exist" and "does not prohibit the district court from determining

9   whether a proceeding is core or non-core where . . . there has

10  been no prior determination." <u>In re Don's Making Money, LLLP</u>,

11  No. 07-319, 2007 WL 1302748, at *4 (D. Ariz. May 1, 2007).

12          Nonetheless, several decisions from the Ninth Circuit

13  Court of Appeals have interpreted § 157(b)(3) to express, at a

14  minimum, a clear preference for the bankruptcy judge to initially

15  determine whether a claim is properly characterized as core or

16  non-core. <u>See, e.g.</u>, <u>In re Coupon Clearing Serv., Inc.</u>, 113 F.3d

17  1091, 1097 (9th Cir. 1997) ("The bankruptcy court makes the

18  initial determination whether a case is a core proceeding or an

19  otherwise related proceeding." (citing 28 U.S.C. § 157(b)(3)));

20  <u>In re Int'l Nutronics, Inc.</u>, 28 F.3d 965, 969 (9th Cir. 1994)

21  ("We need not decide whether Robertson's antitrust claim would

22  have qualified as a core proceeding, a determination to be made

23  in the first instance by the bankruptcy court." (citing 28 U.S.C.

24  § 157(b)(3))).   Decisions from this district bolster this

25  interpretation as well. <u>See</u> <u>Williams v. Sanderson Cmtys., Inc.</u>,

26  No. 07-2366, 2009 WL 728464, at *1 (E.D. Cal. Mar. 19, 2009)

27  (Karlton, J.) ("[S]ection 157 requires that the determination of

28  whether a matter is a core proceeding be performed by the

1  bankruptcy judge . . . .  When the bankruptcy court has not made

2  that determination, remand to that court is appropriate.")

3        At this time, the bankruptcy court has yet to determine

4  whether this adversarial proceeding is core or non-core.

5  Ultimately, because the bankruptcy court has been administering

6  the underlying bankruptcy proceeding in this case since September

7  2002, permitting that court to first determine whether this

8  adversarial proceeding is core or non-core would be solicitous

9  not only of that court's "unique knowledge of Title 11," but also

10 to its "familiarity with the action[]."  In re Healthcentral.com,

11 504 F.3d at 787-88.  Accordingly, the court will decline to

12 exercise its discretion to permissively withdraw the reference

13 until the bankruptcy court has had an opportunity to make an

14 initial determination of whether the action is core or non-core.

15 See Williams, 2009 WL 728464, at *2.

16        IT IS THEREFORE ORDERED that defendants' motion to

17 withdraw reference be, and the same hereby is, DENIED without

18 prejudice.

19 DATED:  October 16, 2009

20

21 _____

22 WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

15